IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

FRANKLIN FATUSIN,

    Petitioner,

vs.                             Case No. 4:11cv163-MP/WCS

ERIC H. HOLDER, et al.,

    Respondents.

_____/

## REPORT AND RECOMMENDATION

This is a *pro se* § 2241 petition for writ of habeas corpus filed on April 20, 2011. Doc. 1. Petitioner was finally granted leave to proceed *in forma pauperis,* doc. 10, on June 1, 2011, and thereafter Petitioner filed an amended petition containing his original signature. Doc. 12.

Service was directed, doc. 13, and Respondents filed an answer to the petition on August 18, 2011. Doc. 20. Petitioner filed his reply shortly thereafter, doc. 21, and this case is ready for a ruling.

Petitioner stated in the amended petition that his order of removal was entered on April 6, 2010. Doc. 12. Petitioner has been in custody since October of 2010, and he contends he is detained indefinitely because Respondents are unable to remove

him.  Petitioner seeks release from custody pursuant to Zadvydas v. Davis, 533 U.S. 678 (2001).

In the answer, Respondents contend that Petitioner had previously been deported from the United States to his native country of Nigeria.  Doc. 20, pp. 1-2.  It is argued that Petitioner's current prolonged detention is due to his own actions in preventing his removal.  Id., at 3.

In reply, Petitioner asserts he has filed a motion to reopen his case and seek cancellation of the removal order.  Doc. 21, p. 3.  Petitioner asserts that motion is pending before the Board of Immigration Appeals, at least as of August 8, 2011.  Id.  Petitioner contends has cooperated "with ICE by signing all the papers presented to him."  Id., at 6.

**Relevant Facts**

Petitioner is a citizen and national of Nigeria who entered the United States in, or near, Miami, Florida on or about February 17, 1984.  Doc. 20-1 (Pasterak affidavit).  Petitioner entered the United States "without the consent" of the Attorney General since he had been deported from the United States just 42 days earlier, on January 6, 1984.  Id.  Petitioner was convicted of second degree grand theft on October 29, 2001, and sentenced to ten years probation.  Id.  He was taken into ICE custody on March 29, 2005, and removal proceedings were initiated.  Id.  On June 10, 2008, the Immigration Judge ordered Petitioner removed from the United States to Nigeria.  Id.  However, Petitioner reserved his right to appeal that order to the Board of Immigration Appeals and on June 22, 2008, he "was released from ICE custody on a bond."  Id.

Petitioner filed a timely appeal to the Board of Immigration Appeals, but the appeal was dismissed on April 6, 2010, making that the final order of removal. *Id.* On October 22, 2010, Petitioner was arrested in Broward County, Florida, and charged with violation of probation and grand theft. *Id.* He was transferred back into the custody of ICE on October 29, 2010. *Id.*

ICE requested a travel document package from the Nigerian Consulate and also entered Petitioner "into ICE's electronic Travel Document system ('eTD') on November 5, 2010, with frequent checks with the Nigerian Consulate for updates on the issuance of a travel document for the petitioner." Doc. 20-1, p. 2.

Respondents assert that throughout his detention by ICE awaiting removal, Petitioner has "openly stated that he would not cooperate with his removal." *Id.* Petitioner "maintains that he has family in the United States and open court matters, so he therefore refuses to cooperate with ICE's removal process against him." *Id.* On January 26, 2011, and on April 27, 2011, Petitioner was served with a Warning of Failure to Depart and notice of Failure to Comply because of his failure to cooperate. *Id.*

On June 1, 2011, the Nigerian Consulate issued a travel document for Petitioner and confirmed his citizenship. Doc. 20-1, p. 2. ICE attempted to remove Petitioner on July 7, 2011, but "once the boarding for the flight was called, the [P]etitioner became verbally and physically obstinate." *Id.* Petitioner was again considered to have failed to comply with the removal order, and on July 12th, he was "again served with a Notice of Failure to Comply letter." *Id.* Petitioner provided copies of the Warning for Failure to

Depart notices he received on March 1, 2011, doc. 21-1, p. 9, March 31, 2011, *Id.*, at 7, and May 4, 2011.  *Id.*, at 5.

## ANALYSIS

This Court has jurisdiction over this § 2241 habeas petition as Petitioner is not challenging a final order of removal, but only seeking release from what he asserts is an unlawful and indefinite period of detention pursuant to Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).  In Zadvydas, the Supreme Court held that the continued detention of legal permanent aliens beyond the mandated 90-day[1] removal period was permissible under the Constitution, but only for as long as was "reasonably necessary to bring about that alien's removal from the United States."  *Id.*, at 689, 121 S. Ct. at 2498.  For the sake of uniform administration by the federal courts, the Zadvydas Court held that "the presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months; after that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.' "  Clark v. Martinez, 543 U.S. 371, 125 S.Ct. 716, 722, 160 L.Ed.2d 734 (2005), *quoting* Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505.  The Court also concluded that if "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  Zadvydas, 533 U.S. at 699, 121 S.Ct. at 2503.

---

[1] Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States.  8 U.S.C. § 1231(a)(1)(A).

In Clark v. Martinez, *supra*, the Court extended its interpretation of 8 U.S.C. § 1231(a)(6) to inadmissible aliens.[2]  The Court concluded that there was no reason why the period of time reasonably necessary to effect removal would be longer for an inadmissible alien than for an admissible alien.  Clark, 543 U.S. at 386, 125 S.Ct. at 727.  Thus, it held that the 6-month presumptive detention period prescribed in Zadvydas should be applicable.  *Id.*  Accordingly, under Clark and Zadvydas, when an alien shows that he has been held more than six months beyond the removal period and his removal is not reasonably foreseeable, a § 2241 petition should be granted. Clark, 543 U.S. at 386-387, 125 S.Ct. at 727; Benitez v. Wallis, 402 F.3d 1133, 1135 (11th Cir. 2005) (relying on Clark to hold that "an inadmissible alien can no longer be detained beyond the statutory 90-day removal period of § 1231(a)(1), where there was no significant likelihood of removal in the reasonable foreseeable future.").

The relevant statute provides the government with a 90-day period of time to remove an alien.  8 U.S.C. § 1231(a)(1)(A).  However, the removal period "shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to

---

[2] The relevant statute provides: "An alien ordered removed who is inadmissible under section 1182 of this title, removable [for violations of nonimmigrant status or entry conditions, violations of criminal laws, or threatening national security] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."  8 U.S.C. § 1231(a)(6), *quoted in* Benitez v. Wallis, 402 F.3d 1133, 1134 (11th Cir. 2005).

Case No. 4:11cv163-MP/WCS

prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).[3] Accordingly, that statute expressly permits an alien to be detained longer than the presumptive removal period where the alien acts or conspires to prevent his removal.

In Sango-Dema v. District Director, I.N.S., 122 F.Supp.2d 213 (D. Mass. 2000), a case decided before Zadvydas, the court denied habeas relief where the Petitioner was found to be "the cause for the long delay." The court concluded that "an alien cannot trigger [a constitutional right to be free from indefinite detention by the INS] with his outright refusal to cooperate with INS officials." Sango-Dema v. District Director, I.N.S., 122 F.Supp.2d at 221.

In Powell v. Ashcroft, 194 F.Supp.2d 209 (E.D.N.Y. 2002), a case decided in the wake of Zadvydas v. Davis, the court noted that Zadvydas was concerned with the constitutionality of § 1231(a)(6) where aliens were in " 'deportation limbo because their countries of origin had refused to allow [them] entrance.' " Powell, 194 F.Supp.2d at 211, *citing* Sango-Dema, 122 F.Supp.2d at 221 (explaining Zadvydas). The court held that Zadvydas was inapplicable because it "did not discuss the constitutionality of Section 1231(a)(1)(C) and the tolling of the removal period during the time of an alien's non-cooperation." Powell, 194 F.Supp.2d at 212, *citing* Guner v. Reno, 2001 WL 940576 (S.D.N.Y. Aug. 20, 2001). The court held that petitioner's continued detention was appropriate because he had not "provide[d] accurate and complete information to the INS," and that after he did so, it was likely that he would be removed. Powell, 194 F.Supp.2d at 212. *See also* Archibald v. I.N.S., 2002 WL 1434391, *8 (E.D.Pa. July 1, 2002) (finding the case factually distinguishable from *Zadvydas* where "Archibald's

---

[3] An alien must be detained during the "removal period." 8 U.S.C. § 1231(a)(2).

Case No. 4:11cv163-MP/WCS

detention [was] a direct result of his seeking relief from deportation" and holding that because his indefinite detention was a result of his requesting a stay, he could not "be heard to complain[] that the time period during which he has been detained constitute[d] a denial of due process."); Thevarajah v. McElroy, 2002 WL 923914 (E.D.N.Y. Apr. 30, 2002)(holding that petitioner's nearly five years in the custody of INS was constitutional following *Zadvydas* because the continued detention was lengthened largely because of petitioner's own actions); *cf.* Seretse-Khama v. Ashcroft, 215 F.Supp.2d 37 (D.D.C. July 22, 2002) (rejecting respondent's argument that petitioner "has not cooperated in obtaining travel documents because he told Liberian officials that he did not want to return to Liberia" and noting that INS had not argued that "petitioner refused to request travel documents or refused to be interviewed by Liberian officials" and did not deny "his Liberian citizenship, or gave false or misleading information that impeded the issuance of travel documents.").

In this case, the § 2241 petition should be denied for two reasons: (1) tolling and (2) Petitioner fails to demonstrate the reasonably likely requirement.  As for the first reason, I conclude that Petitioner's six-month period of removal pursuant to Zadvydas has been tolled as permitted by 8 U.S.C. § 1231(a)(1)(C).  Petitioner was scheduled to be removed on July 7, 2011, but Petitioner did not board the flight back to Nigeria.  He asserts that he was in the Wakulla County Jail on July 7, 2011, doc. 21, p. 3, but has not shown with credible evidence that this was so.  His continued detention is, thus, due to his own actions and, thus, Petitioner may not be heard to complain of delay in effecting his removal.  Petitioner has acted to toll the removal period and his continued detention is lawful pursuant to 8 U.S.C. § 1231(a)(1).

Case No. 4:11cv163-MP/WCS

Secondly, in light of the fact that Nigeria issued a travel document for Petitioner on June 1, 2011, Petitioner has failed to show that his removal is unlikely in the "reasonably foreseeable future." Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505. Petitioner can be removed when Petitioner is willing to cooperate and this § 2241 petition should be denied pursuant to 8 U.S.C. § 1231(a)(1)(C).

Accordingly, it is **RECOMMENDED** that the amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 by Franklin Fatusin, doc. 12, be **DENIED.**

**IN CHAMBERS** at Tallahassee, Florida, on October 18, 2011.


s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**