IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**FRANKLIN FATUSIN,**

    **Petitioner,**

**vs.**　　　　　　　　　　　　　　　　　　**Case No. 4:11cv163-MP/WCS**

**ERIC H. HOLDER, et al.,**

    **Respondents.**

_____/

## SECOND REPORT AND RECOMMENDATION

In October, 2011, a report and recommendation was entered recommending that Petitioner's *pro se* amended § 2241 petition for writ of habeas corpus, doc. 12, be denied. Doc. 22. After review of Petitioner's objections to the report and recommendation, doc. 23, the case was referred back to me for an evidentiary hearing concerning two disputed issues: (1) whether travel documents were issued for Petitioner by Nigeria for removal on July 7, 2011, and (2) whether Petitioner failed to board a removal flight to Nigeria on July 7, 2011. Doc. 24. The evidentiary hearing was held earlier today, and Petitioner was represented by counsel.

**Evidence at the hearing**

Petitioner testified that he had never before seen a copy of the travel document issued for him by the Consulate General of Nigeria. The document was produced as Petitioner's exhibit 1. Petitioner also testified that he was never told that an airline ticket was obtained for him to be returned to Nigeria. When asked whether anyone ever asked him in July of 2011 whether he would leave the jail and return to Nigeria, Petitioner answered, "No, not to my recollection."

Petitioner further testified that on January 18, 2012, immigration officials came to the Wakulla County Jail and told him he was leaving. Petitioner was taken from Wakulla to the Krome processing center and then to Louisiana in preparation for his removal to Nigeria. Petitioner said he went with them willingly and understood he was leaving on January 23, 2012, to go to Nigeria from Louisiana. Petitioner testified that on January 23rd, he was not taken to the plane and on the next day, he was told he could not go to because he did not have a travel document. On or about February 2nd, Petitioner was returned to the Wakulla County Jail.

On cross-examination, Petitioner was asked whether he had told ICE officials for the past year that he did not want to leave and he answered, "No." Petitioner did admit, however, that he told the Nigerian Consulate that he had pending litigation in Broward County. Petitioner denied telling the Consulate that he did not want to go back to Nigeria, and denied that he told the Consulate not to issue travel documents because of the pending litigation. Petitioner said that he only told the Consulate that he had pending litigation.

The pending litigation referred to by Petitioner is a second Rule 3.850 motion he filed in Broward County, Florida, in 2010, attacking a conviction that became final over five years earlier. Petitioner said he was convicted in Broward County on October 29, 2001, that he entered a plea and was adjudicated guilty. He was serving a ten-year probation period. He filed an appeal which was decided about a year later.[1] He said that he filed a Rule 3.850 motion which he admits was denied, but Petitioner said he "never saw anything on it." Petitioner filed a second Rule 3.850 motion in December, 2010, at the end of the ten year probation period, which is currently pending. That motion, however, is not a challenge to the removal order[2] and Petitioner has not been granted a stay of removal.

Deportation Officer Gerald Powers testified for Respondents. He explained that ICE coordinates to obtain an alien's removal by seeking a travel document from the alien's native country, establishing a travel itinerary, and arranging transportation. Removal could occur one of three ways: an unescorted public commercial flight, an escorted public commercial flight, or a private charter flight. An escorted flight is used if the alien has committed prior acts of violence, has a propensity of violence, or a history of escapes.

Officer Powers explained that aliens removed on a charter flight (not commercial flight) have no real opportunity to refuse removal because the flight is not carried out in

---

[1] In the answer, Respondents state Petitioner was convicted of Grand Theft, second degree, on October 29, 2001. Doc. 20, p. 2.

[2] Petitioner was ordered removed not just because of the 2001 criminal conviction, but also because Petitioner had previously been deported from the United States in January of 1984, and then unlawfully re-entered the United States the following month. Doc. 20, pp. 1-2.

public, through public terminals, and law enforcement are on the flight for the duration. Individuals who are removed on escorted or unescorted flights can thwart removal by refusing to board the aircraft or to comply with instructions. Officer Powers explained the United States does not want a public incident occurring on escorted and unescorted public flights, and if an alien expresses any sort of refusal to cooperate, the alien is not placed on the flight.

Powers further explained that the risk of a public incident for commercial flights is greater in Tallahassee than in Atlanta. Tallahassee is a small airport, and an alien deported on a commercial flight in Tallahassee must go through the public boarding areas rather than board directly from the tarmac. Atlanta is a bigger airport, and aliens can be boarded separately through gates directly to the tarmac.

In Petitioner's case, Nigeria issued an "emergency travel document," admitted into evidence as Defendant's exhibit 1. This travel document was active for the removal attempt on July 7, 2011. Also admitted into evidence was the I-205 form, which is the warrant of removal for Petitioner. Defendant's exhibit 6. On July 7, 2011, Petitioner was to be taken to the Tallahassee airport and Officer Powers would coordinate a "meet and greet" in Atlanta, meaning that Petitioner would be placed unescorted on a flight from Tallahassee to Atlanta, to be met again by an ICE agent in Atlanta. That travel itinerary was never carried out in Petitioner's case and he never left the Wakulla County Jail in July, 2011.

Officer Alfredo Alvarez and Officer Ramono Arroyo, both of whom are Immigration Enforcement Agents, testified that on July 7, 2011, ICE officials were instructed to take Petitioner to the Tallahassee airport and verify Petitioner's departure.

They drove to the Wakulla County Jail early that morning and brought Petitioner to the office.  Officer Alvarez told Petitioner that he was ready to go, and asked Petitioner if he would be compliant.  Petitioner said that he had pending litigation and did not want to go.  He also said that he had family in Miami.  Officer Alvarez showed Petitioner the first page of his travel order, though it is policy not to do that ahead of time for security reasons.  Then, Officer Arroyo had employed a "custodial touch" on Petitioner to lead him forward (placing a hand on his shoulder), but Petitioner shrugged his shoulders and pulled away from Officer Arroyo.

It is the policy of ICE that if an alien shows signs of resisting when a commercial flight is to be used, the travel itinerary is cancelled because immigration officials do not want trouble or a disturbance at a public airport.  When Petitioner pulled back from Officer Arroyo, both Arroyo and Alvarez believed Petitioner was "becoming hostile," so they returned him to the jail cell.  Officer Alvarez called his supervisor, Officer Powers, and advised him of the situation.  Powers cancelled the flight reservation.

Petitioner sought to show his removal is now in limbo because in January, 2012, Petitioner was removed from the Wakulla County Jail and taken to Oakdale, Louisiana for removal on charter flight to Nigeria.  Officer Powers said that the United States has had trouble with deportations to Nigeria, and that charter flights to Nigeria are arranged about once a year to make sure that the aliens leave as scheduled.  The government of Nigeria, however, had only issued travel documents for approximately 30 of the 100 aliens in time for the January, 2012, flight, and Petitioner was one for whom no travel document was issued.  Thus, he could not be deported in January, 2012, and he was returned to Wakulla County Jail.  Officer Powers said that the Nigerian Consulate did

not issue travel documents to anyone who claimed they had pending litigation, and Petitioner claimed he had pending litigation.

Deborah Pasterak, who is employed by ICE as the acting supervisor for the Tallahassee office, testified that she spoke with the Nigerian Consulate and they confirmed that Petitioner had advised the Consulate that he had pending litigation. The Consulate requested that Pasterak provide documentation that Petitioner does not have litigation pending that would block removal. She searched the Eleventh Circuit Court of Appeals records and determined there was no pending litigation that would interfere with Petitioner's removal. She explained that her only concern was whether an alien had litigation pending that challenged or involved the order of removal. She explained that if an alien has a final removal order, and a court has not issued a stay of removal or litigation is not pending that challenges the order of removal, then the alien may be removed notwithstanding other pending litigation. She said that the alien can seek a stay of removal when he has *other* kinds of litigation pending, but Petitioner has not sought or obtained such a stay. Pasterak testified that she has provided the relevant documentation to the Consulate.

Officer Powers said that by March, 2012, immigration officials expect to have answers from the Nigerian Consulate on the pending requests for travel documents for Petitioner and a number of other Nigerian aliens. Officer Powers also testified that as late as last week, Petitioner told him at the Wakulla County Jail that "you guys aren't going to deport me," that he was going to be released and go back to his family in Miami.

**Findings of fact**

Petitioner's testimony is not credible at all.  His denial of what happened on July 7, 2011, is contradicted by Officers Alvarez and Arroyo.  On July 7, 2011, he could have been deported to Nigeria on an unescorted flight.  He had a valid travel document then, he was shown the first page of the travel documents, but he refused to cooperate, stating that he did not want to be deported, that he had pending litigation and wanted to return to his family in Miami, and he pulled away from the immigration enforcement officer.  The ICE policy, to cancel a deportation attempt under those circumstances, where the deportation is to occur by commercial airline, is reasonable.  The policy is especially reasonable in Tallahassee, where the airport cannot accommodate tarmac boarding for commercial flights.

Petitioner has continued to block his deportation because he has refused to seek travel documents from the Nigerian consulate.  Instead, he has told the Nigerian consulate that he has pending litigation, causing the Nigerian Consulate as recently as January, 2012, to refuse to provide a new travel document.  The second Rule 3.850 motion has nothing to do with whether he should be deported, and will undoubtedly be denied as successive and untimely.  It was instituted solely to create an impediment to deportation.

**Conclusions of law**

Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) held that the continued detention of legal permanent aliens beyond the mandated 90-day[3]

---

[3] Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States.  8 U.S.C. § 1231(a)(1)(A).

removal period is permissible under the Constitution.  *Id.*, at 689, 121 S. Ct. at 2498.  Presumptively, removal should be effectuated within six months, but aliens may be detained longer than that period of time.  See Clark v. Martinez, 543 U.S. 371, 125 S.Ct. 716, 722, 160 L.Ed.2d 734 (2005) (extending the interpretation of 8 U.S.C. § 1231(a)(6) to inadmissible aliens[4]), *quoting* Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505.  It is true that when "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  Zadvydas, 533 U.S. at 699, 121 S.Ct. at 2503.

However, the removal period "shall be extended . . . and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(C).[5]  That statute expressly permits an alien to be detained longer than the presumptive removal period where the alien acts or conspires to prevent his removal.

In this case, Petitioner's extended period of detention is due to Petitioner's own actions.  He "cannot trigger [a constitutional right to be free from indefinite detention by the INS] with his outright refusal to cooperate with INS officials."  Sango-Dema v. District Director, I.N.S., 122 F.Supp.2d 213, 221 (D. Mass. 2000).

---

[4] The relevant statute provides: "An alien ordered removed who is inadmissible under section 1182 of this title, removable [for violations of nonimmigrant status or entry conditions, violations of criminal laws, or threatening national security] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."  8 U.S.C. § 1231(a)(6), *quoted in* Benitez v. Wallis, 402 F.3d 1133, 1134 (11th Cir. 2005).

[5] An alien must be detained during the "removal period."  8 U.S.C. § 1231(a)(2).

The removal period has been tolled as permitted by 8 U.S.C. § 1231(a)(1)(C) from July 7, 2011, to February 28, 2012, the current date, because of Petitioner's conduct to date. Thus, this § 2241 petition should be denied, and Respondents are entitled to continue Petitioner's detention pursuant to 8 U.S.C. § 1231(a)(1).

Accordingly, it is **RECOMMENDED** that the amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 by Franklin Fatusin, doc. 12, be **DENIED.**

**IN CHAMBERS** at Tallahassee, Florida, on February 28, 2012.

s/   William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**